Good morning, we have six cases on the calendar this morning. Three patent cases from district courts, a patent case from the Board of Appeals, a military paid case from the Court of Federal Claims, and a veterans case from the Court of Appeals for Veterans Claims. The claims court and veterans cases are submitted on the briefs and will not be argued. We have four patent cases. The first one is SimpleAir v. Google, 2016-2738, Mr. Uchtman. Good morning, and may it please the Court. The first topic I'd like to address today is how to treat continuation patents for purposes of the claim preclusion doctrine. Just a housekeeping question, how many more patents are lurking here? The total family has ten of them. Two of them are currently subject to a declaratory relief action that they filed in California, which the parties have agreed to stay for the moment. Because all of the patents should have expired by now, right? That's correct, they all have. I'm just wondering, however this case gets resolved, are we going to be in this continuing night of the living dead situation where there's going to be more patents coming out of this spec that might be used to sue Google again? No, Your Honor. These patents, all of the patents, have expired. We're at the end. I'm sorry, sir? We're at the end of the litigation process with this case. That's right, Your Honor. And then the D.J. action. That's right. Okay. In the district court, Google presented the theory that all continuation patents and a family of patents should essentially be treated as one patent, one piece of property giving rise to just one cause of action. But that's stating a broad rule when we're deciding a case here. We've got a bunch of patents there, continuations, claims differ very little from each other, and there was a terminal disclaimer which can only have been filed to avoid an obviousness rejection. So why isn't this readily determinable? Your Honor, for several reasons. First, the filing of a terminal disclaimer under this court's law does not create a presumption nor an estoppel on the merits of any double patenting objection. It would be relevant, though, can't it? It would be relevant, Your Honor, if we had lost the prior case on obviousness. Now, in every single one of the prior cases and in the various IPRs and CBMs, we succeeded on the grounds of validity. Doesn't a terminal disclaimer presume that there are similarities between the patents? It presumes, well, Your Honor, it does in the sense that it is usually only filed in response to an obviousness-type double patenting rejection or suggestion at the patent office. Well, that's the use of the terminal disclaimer, but really what you're saying in that situation is that the patentee is seeking a patent on the same invention. No, Your Honor. If it were exactly the same invention, a terminal disclaimer would not overcome that rejection. One patentably indistinct. I'm sorry, Your Honor? An invention not patentably indistinct. Patentably distinct. I mean, that's the point, isn't it? Well, the point of the terminal disclaimer is that it can overcome a rejection that it's not patentably distinct, but a finding that something is not patentably distinct or even just a mere suggestion or rejection is not a finding that it's the exact same invention. Moreover, because that would be still a violation of Section 101. But I guess what Judge Gilstrat relied upon was your terminal disclaimer as being a representation that the claims in these patents are not patentably distinct over the other patents, which have already been litigated in final judgment as being not infringed by Google's products. That's my understanding of the rationale below, right? That's right, Your Honor. Therefore, by being patentably indistinct, there can't really be a new cause of action with these patents given the insubstantial difference between these patent claims and the old patent claims. No, Your Honor, that's not correct. But that's the logic of the district court's reasoning, right? That is the logic. Okay, now you can go ahead and try to destroy that logic. First, Your Honor, the filing of a terminal disclaimer under this Court's holding in Quad Environmental, this case is cited in our brief, does not raise a presumption nor an estoppel on the merits of the double-patenting rejection. It is improper to convert this simple expedient of obviation into an admission or acquiescence of estoppel on the merits. That's the Quad Environmental case. So when we filed that terminal disclaimer, it would be improper for anybody at the Patent Office or anybody in subsequent litigation to say that that is an acquiescence, that that is an agreement, that these inventions are, in fact, patentably indistinct. Furthermore, Your Honor, we are here in the context of a motion to dismiss. It is their burden for any one of these preclusion doctrines to show that these patents raise the exact same cause of action as the prior patents. Now, to do that, they simply pointed to the terminal disclaimer and the relationship to the family as if that created an irrebuttable presumption that they raise one and only one cause of action. That has never been found by any court, district court, or any of the opinions of this Court before. And furthermore, the inferences need to be resolved in our favor on a motion to dismiss. They have to be resolved in our favor. We have pleaded specifically that we did not intend or admit in filing that terminal disclaimer that these patents were patentably indistinct. I guess a concern I have is I've looked at your claims. I've looked at the claims that were litigated in Simple Error 1 and read your patent. And even if we were to send this case back, I don't see how you would be able to survive a new motion arguing that there really is no new cause of action here because the claims are so similar to the prior claims, especially in every critical way, or an issue preclusion argument, given the claim language of whether the system is online or offline, you're going to be getting these notification messages, i.e. through that what I'll call right-hand side of the figure communication pathway that is distinct from the communication pathway when the user device connects via the Internet to anything on the Internet. Your Honor, I'll address that in three points. The first is that similarity between these patents is not sufficient to show that they give rise to the same cause of action. This Court has held repeatedly that each patent gives rise to its own cause of action. They are each distinct property rights issue. But we've also said beyond that in cases like Senju and, I think, ASPEX, when the claims aren't going to be any material and can't be broader because those were re-exam claims, then there's no cause of action there. So then the inquiry really becomes, okay, to what extent are the claims materially broader? So you have your baseline statement from Kearns, but then you have these other statements from Senju and ASPEX that ask us to look a little more deeply. And in those cases, in fact, those patent owners were barred by claims. Absolutely, Your Honor. And as the Court recognizes, these are not re-exam patents. These are continuation patents. And by law, we are permitted during prosecution of these to make them broader, for example, by removing limitations that were found not to infringe. All right, but my point is when you have the same claim language, regardless of whether the user device is online or offline, you're going to get these notification messages, i.e., you're going to be using this distinct pathway for transmitting and receiving the notification messages, which is different from the Internet connection. Your Honor, it is not the same language. The claims are drafted differently, and they have a different meaning. And this Court never previously ruled on this claim language. The ruling that was on the prior patent, and this is in the opinion that Judge Vrena also signed on to on the 914 patent, addressed different language, a term data channel that the Court said and rightly found was not found anywhere in the specification. These patents specifically refer to an information provider, which is a source on the Internet, for example, ESPN.com and their website. And what these claims say is that you're going to send the notifications and notify the device even when the remote computing device is not connected to CNN.com. It is not about whether the device is connected to the Internet at large or has a data channel, a term that doesn't appear. But the concern I have for your position is when the language in the claim says whether online or offline, that basically means whether you're powered on or powered off to the network. And so if there's additional language in the claim that says whether you're powered on to CNN.com or whether you're not powered on to CNN.com, the operative language is are you powered on to the network or not. And that's what the language offline, online means. It's the exact same language that was earlier litigated in the prior patents, and that is part of the critical reason why this court concluded that Google's products don't infringe because they only use one pathway. They don't use two distinct pathways. Your Honor, two things. The analysis that you're providing at the moment would be proper in one of two situations. First, under claim preclusion, if this court were to conclude that Kearns doesn't apply because that's too much of a bright-line rule, and we do need to, in fact, even for purposes of claim preclusion, look at whether there are differences that are material in these claims that can show that the claims are broader and may, in fact, be infringed, the type of analysis that you're providing, that inquiry, is one that would be proper under that analysis. Now, what it isn't related to is an assumption, an automatic assumption that because there's a terminal disclaimer filed or because these patents are part of the same family, that we don't even get to make the argument about material differences between the claims. The second context in which the analysis you're providing would come up is, in fact, in the context of an issue preclusion framework. That is the framework that we believe is the proper one for analyzing this situation, but it is not one that they raised below. They've only raised it here for the first time on the appeal. It was not fair to do that when we don't have a... make a whole new analysis, right, on the claim preclusion, issue preclusion, to examine the claims of all the patents and see if there is indeed any type of preclusion. Absolutely, Your Honor, and we can win that argument below. The argument of issue preclusion, and this is something that is also distinct about this case. Usually when these matters come up to the court, either under the doctrine of claim preclusion or Kessler, the district court below has addressed each of the three available or potentially available situations. Claim preclusion, Kessler, and issue preclusion. So you've been able to do the full analysis, and this court can then determine whether it's the case that this one or that one applies. Here... Mr. Reichman, you're well into the time you wanted to save for rebuttal. You can continue to use it or save it. I'll continue for the moment, Your Honor. Thank you. We believe that if the court is going to adopt a test that says for purposes of claim preclusion, it's not enough to just simply be your own patent. You have to look for claim preclusion to determine whether there's material differences under the claim. Then that's an analysis that needs to take place at the district court where they need to meet their burden of showing that these claims are materially the same as the others. Just as in a case where a new product is asserted, it's the burden of the defendant to show that the two products are essentially the same. If the test is going to be equivalent for related patents as it is for related products, then it still is their burden to show there's no material difference. If we are going to get to the doctrine of issue preclusion and into the question of whether this court, in its prior decision, ruled that there's only one invention in this entire specification and it has this one data channel limitation and that no other claims can ever issue in any other patents out of this specification that are different from that, that's not what this court ruled. And we believe that we should provide a full and fair opportunity at the district court to show that issue preclusion does not apply to this claim language. It's very different from the data channel language. And for the moment, I'd like to reserve the remainder for rebuttal. We will do that, Mr. Verhoeven. Good morning. May it please the court. Simple Error has had multiple opportunities to prove its claims. It's asserted four patents against Google and we've got final judgments in our favor for Google on all four patents. This is now the fourth round in which they're asserting the same invention against the same accused product. By filing terminal disclaimers back to the 433 patent, Simple Error made an election to treat the 838 and 048 patents in this appeal as part of a single invention. Well, we know why terminal disclaimers are filed, but we also have statements in case law saying it's not an admission. That's correct, Your Honor. So I want to get right to that. So we're not arguing it's an admission. We're not arguing it's a estoppel. If you look at those cases, they're not talking about obviousness-type double patenting based on the prior patent. Those cases are talking about, can I argue obviousness based on a piece of prior art? The point I want to make is, regardless of admission or estoppel, during the prosecution of a patent, if you get a rejection for obviousness-type double patenting, the patentee can make an election. They can elect to challenge that and preserve their invention as a separate invention, or they can simply file a terminal disclaimer. The effect of filing the terminal disclaimer is that it removes obviousness-type double patenting. We know all this. Yes. So at district court, I can't argue obviousness-type double patenting to the jury or the court because they've made that election, and now they come to the court. No, but to argue claim preclusion, you have to then, as the movant, argue why these claims are qualitatively the same or insignificantly different from the claims that had already been litigated, and that's what you didn't do. You used the terminal disclaimer as creating, I guess, a strong presumption, if not a clear rule, that these claims, new claims, can never be litigated in light of the terminal disclaimer, and that runs into the teeth of quad-environmental motionless keyboard and orthopharmaceutical, where we say, where we've said, and we can debate whether it's right or wrong, but we have said that you cannot look at a terminal disclaimer in some kind of substantive way. It's nothing more than a procedural tool to remove the obviousness-type double patent rejection. Exactly. And if you look at those cases, they're saying, like motionless keyboard, saying obviousness-type double patenting is not relevant anymore. So in motionless keyboard, I believe, the federal circuit said the district court was wrong. You're not arguing validity here, right? You're arguing non-infringement? What we're arguing, Your Honor, is that the appropriate test for this court to consider in preclusion is the transaction test, not the identity of issues test. That's claim preclusion, or excuse me, issue preclusion. Did Judge Gilstrap do that? Yes, he did. In fact, the best... Didn't he rely, his decision, on the terminal disclaimer matter? He did rely on that as one factor, Your Honor, and it should be one factor. It's a very important factor, but you need to look at the totality of circumstances. And in the totality of circumstances, Your Honor, we've got multiple lawsuits being filed on the same patent family. We've got this district court has now done three trials, two trials in a Simple Error 1 case and a trial in a Simple Error 2-3 combined case, and now they want him to go start over all... I don't see how totality of circumstances, the way you're describing, is a factor in these different tests. Well, the transaction test, which all parties admit is the applicable test for claim preclusion, looks at... The transaction test is a very limited test. It's a narrow test. It's not a totality of circumstances test. It's a test that looks at whether there's a common nucleus of operative fact. And let me give you an example, Your Honors. Yeah, but the fact that there is multiple lawsuits swirling around here doesn't respond to that. All I'm saying, Your Honors, it looks at the factual situation and whether there's a common nucleus of operative fact. From the Supreme Court on down, that's what the transaction test is. And I just want to say one thing about this. Think about counterclaims and compulsory counterclaims. What's the test for whether a counterclaim is compulsory? Whether there's a common nucleus of operative fact. Same test. Here, we're talking about claims that clearly are not even the claims that the plaintiff is making. They're claims from the defendant. They're counterclaims. And those claims, if they involve the common nucleus of operative fact, must be asserted or they're waived. So the common nucleus of operative fact is not limited in some strict way to a particular claim. It's looking at the factual situation. What is the story? Are the common facts that are alleged, regardless of the form... Let me go back. Maybe we read the cases differently. It seems to me that Judge Gilstrap based his decision on terminal disclaimer, that he didn't make this claim-by-claim comparison and considered the totality of circumstances. He just simply said, there's a terminal disclaimer here that tells me we're dealing with the same invention. And that was the end of his analysis. I agree he did not do a claim-by-claim comparison. So if we were to remand, then that's what Judge Gilstrap would have to do, right? If Your Honor were to remand, I would say with respect to Your Honor,  And you'd be looking at whether there's an identity of issues. And there's a distinction between claim preclusion and issue preclusion. Well, that would be up to him then to decide what test applies here, including testing. Yes, Your Honor. The point, though, I'm making is there's two different doctrines here. And the claim preclusion doctrine is meant to avoid having to do this, having to go back and recheck everything and make sure everything was identically decided. It's saying if it's the same transaction, the same common nucleus of operative fact... But that's the whole point. You're assuming the conclusion. Is it the same transaction? Is it the same common nucleus of operative facts? Yes, they all come from the same specification, but they're all different claims. You can't just automatically say every single continuation patent is barred from being asserted after one patent, an entire family of patents, has been litigated to non-infringement. That can't be the rule. So then the next question is, what is the rule? And you're saying, well, the next rule is terminal disclaimer. But we have case law in the books that says terminal disclaimer shouldn't be presumed to have some kind of substantive confession-concession estoppel effect. So then where do we go? I think where we go is you've got to actually go through the exercise, and it could be easy in this case, but you've got to nevertheless go through the substantive exercise of trying to figure out whether these claims and these patents are truly substantively insignificantly different from the prior litigated patent claims. I don't think I'm making myself clear on the terminal disclaimer. Let me take one more shot if I can. What I'm trying to say is, you're right. The terminal disclaimer has no effect on future obviousness arguments and whatnot. But the effect of a terminal disclaimer is it takes the issue, which you've agreed with me, of obviousness-type double patenting based on the prior patent that it's terminally disclaimed to. It removes that. Are you trying to say that the district court first decided that the underlying invention is the same and then only said that the terminal disclaimer issue is that the issue is amplified? Exactly. In other words, that was a secondary point? Yes, Your Honor. There are many factors. The exact same product is being accused. Same witnesses are going to come to trial and testify. Same experts. It's going to be the same trial as the court has already done twice. And the only difference will be that it's a continuation that was terminally disclaimed. And so the court looks at all of those factors together, and I think at the end of the opinion... The judge never did an analysis that these claims are the same quantitatively. Correct. The judge relied on the terminal disclaimer. That's correct, Your Honor. What else did the judge rely on? I think the judge took into consideration that there had been two trials. It's the same accused product. It's the same family of patents, Your Honor. And terminally disclaimer is important here. When you terminally disclaim, it has consequences. You forfeit the term of the patent back to the patent to which you terminally disclaim, and you also have this non-alienation doctrine, which is important here. The non-alienation doctrine says an owner who terminally disclaims cannot sell the terminally disclaimed patent to anyone else. Let's get to the heart of the matter. Am I wrong to draw from Quad International Orthopharmaceutical and Motionless Keyboard the principle that the filing of a terminal disclaimer is not a confession that the new claims are patently indistinct from the old claims? I disagree with that. Now, why is that wrong? Because that's how I'm currently thinking about it. If you look at those cases carefully, they're never addressing that issue. They're talking about a piece of prior art. Motionless Keyboard is talking about, I forget the name of the system, but it's talking about a prior system and whether it was on sale. What I'm saying is when you terminally disclaim, what you're doing is you're saying, I'm electing to take obviousness-type double patenting as to that other patent. That specific issue off the table. And as a result, I get a patent that I may not have otherwise gotten. As a result, I forfeit my term. As a result, I can't sell that patent to anyone else without selling the parent patent because of the policy of avoiding, the same policy that I'm advocating, of avoiding multiple harassing suits. That's the purpose of the non-alienation doctrine. And so what I'm saying on terminal disclaimer is... The rest of the three cases we're talking about, okay, there was the old patent and then there was a new patent where a terminal disclaimer was filed. In all three cases, the old patent, ultimately in litigation, got invalidated for Section 102, Section 102B. And then the defendant wanted to immediately invalidate the new patent where the terminal disclaimer was filed. On the theory that the patent owner had conceded and confessed that the new patent was patently indistinct from the old, now-invalidated patent. And each time we said, no, you can't do that. You can't do this shortcut to conclude that the new patent is just automatically, as a matter of law, patently indistinct in light of the terminal disclaimer. You have to go back and do an independent analysis on whether or not that new patent is, in fact, invalid under 102, 103, whatever. So now that we have the principle in those three cases that you cannot assume that through the TD that the new patent is patently indistinct from the old patent, how can we now say in this particular instance, oh, we can use the TD in Simple Air's new patents to conclude that they must be, as a matter of law, patently indistinct from the old patents that have already been litigated? I don't see how we can do it. Because those cases you just referenced are talking about a shortcut, as you said, so that you don't have to look and see if, in fact, the terminally disclaimed patent is invalid under this prior art, the same as the earlier one was. What we're talking about here is different. What we're talking about here is whether or not they can get their patent by admitting it's patentably indistinct and then turn around and say it's not the same transaction because their patent... You just said they admitted that the claims are patently indistinct. Well, I apologize. Whether they can get their patent by filing a terminal disclaimer, Your Honor, and avoid the challenge of obviousness-type double patenting at the Patent Office, and then turn around, and when they're sincerely suing on the same invention, make that argument, that very argument, that the patent is distinct, having filed a terminal disclaimer to get their patent in the first place. It's completely inequitable, and it's not having anything to do with admission about prior art. It's not having anything to do with estoppel, trying to argue estoppel. What we're saying is they took that off the table, and now they basically took the issue of whether their patent is distinct from the earlier patent. That's the narrow issue I'm talking about. They took that off the table, and now they want to re-raise it, having got their patent by taking it off the table, and put it back on the table, and say, this is patentably distinct, because if it's not patentably distinct, they concede that preclusion applies. Assuming, and I appreciate your argument, but isn't this something that Judge Gilstrup should have considered? Well, I think... But he didn't. He just simply took the terminal disclaimer and said, this tells me it's the same invention, case closed. He did not engage in the very discourse that you're telling us. That's correct, Your Honor, because we moved on claim preclusion, and neither side asked for a comparison of the claims. If our law says that every patent is a new cause of action, then isn't that error on Judge Gilstrup's part? No, Your Honor. To have summarily dismissed this case without engaging in the type of analysis that's required in order to determine rest judicata, claim preclusion, the Kessler Doctrine, claim splitting, whatever applies here, he should have conducted this type of analysis. I would submit he did do that, Your Honor. Well, you said repeatedly he didn't do that. Well, he referred to the transaction test, and he did list some factors, Your Honor. He did not... I agree, he did not compare the claims to look if there was an identity of issues, because that's issue preclusion. Before you go, issue preclusion, claim preclusion, they're all questions of law. Correct. And do we have the authority to handle that right here, right now, or are we obligated to give the district court the first shot at addressing those actual, more merits questions of comparing the new claims against the old? This court is absolutely authorized to consider it right now, Your Honor. Because what? Because, number one, in its opposition, or it's in its appeal papers, Simple Air makes the argument that the patent is different. They make that argument repeatedly. And I can go into the merits of that, but we don't believe it has any merit. But they have raised that issue. Now, we in our opposition, our appellee papers, said, well, the alternative, the court could rule on issue preclusion, and that's a slam dunk as a matter of law, too. And now, in their reply, they say, well, we can't consider it, having argued that you should consider it in the opening papers. Issue preclusion is... I think your time is up. Thank you, Your Honor. And we'll give Mr. Eichmann two minutes. First, Judge Chen, if I may address your last question. Issue preclusion is a question of law, but in order to reach it, the parties have to have a full and fair opportunity to below to state their positions. And in this case, that would include a full and fair opportunity to construe the claims in this case, to at least get their positions of how exactly they would construe this claim. They say it's the same because the terminal disclaimer shows it. We all know there's some similar language, but are we not at least entitled to the opportunity to see their actual claim construction proposal, the portions of the specification that they rely upon, how exactly they are interpreting the prior opinion regarding that data channel language to be so broad as to preclude any other invention in the specification from being claimed? The second point, Your Honor, is that on this issue, again, of distinguishing these claims from the data channel claims, I would direct the Court to Appendix 88, column 29, starting at line 44. This is within the 484 patent. And if you want to take a moment to get there. Yes, Appendix 88, column 29, starting at line 44. Are you there, Your Honor? Okay. This is one example of an embodiment that matches with the language of these claims, these information provider claims. What is described here is the figure 13 embodiment. And what you'll see here, starting at line 47, is, quote, in accordance with the present invention, a user may be instantly notified of e-mail messages without being connected to an e-mail service provider. That embodiment, that invention, is about sending a notification to a remote computing device that is not connected to an information provider, in this case, an e-mail information provider. And if you look through that embodiment in figure 13, what you don't see there is a requirement that that device is online, or it has to be able to be notified even when it's not connected to the Internet. Another example... Did you have a question, Your Honor? Yeah. I guess I don't understand why this helps you, but okay, keep going. The other example that I would point to is on column 30. How is this responsive to your opponents' arguments? Your Honor, what I'm hearing from both sides appears to be an attempt to prejudge our ability on the merits of issue preclusion. So they've argued that the district court below had all the knowledge from the past case and all the experience of the patents in order to make a determination of what these patents are about and how they differ from the other ones. We don't dispute that the court had that knowledge information. We're saying that both sides need to be able to participate in a process where we identify portions of the specification that support our various positions. This is one such portion of the specification, as well as also on Appendix 88, the Figure 12 embodiment that starts at column 30, line 58, and continues to column 31, line 20. And... Thank you, counsel. We'll take the case under revisal. Thank you, Your Honor.